| | |
|---|---|
| **WO** | SC |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

William J. Pedersen, ) No. CV 09-2330-PHX-MHM (DKD)
)
      Plaintiff, ) **ORDER**
)
vs. )
)
Charles Ryan, et al., )
)
      Defendants. )
_____)

Plaintiff William J. Pedersen, who is confined in the Special Management Unit I (SMU I) in Florence, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc.# 1.)[1] The Court dismissed the Complaint with leave to amend. (Doc.# 4.) Plaintiff has filed a First Amended Complaint. (Doc.# 6.) The Court will dismiss the First Amended Complaint with leave to amend.

**I.**     **Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the

---

[1] "Doc.#" refers to the docket number of filings in this case.

**JDDL-K**

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Court should not, however, advise the litigant how to cure the defects. This type of advice "would undermine district judges' role as impartial decisionmakers." Pliler v. Ford, 542 U.S. 225, 231 (2004); see also Lopez, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform a litigant of deficiencies). Plaintiff's First Amended Complaint will be dismissed for failure to state a claim with leave to amend because it may possibly be saved by amendment.

## II. First Amended Complaint

Plaintiff alleges two counts of violation of due process and threat to safety. Plaintiff sues the following employees of the Arizona Department of Corrections (ADC): Protective Segregation (PS) Administrators Hugh Matson, Audrey Burke, and Jeff Branch; Classification Administrator Juanita Baca; Assistant Deputy Warden Stephen Morris; and

Rast Unit Deputy Warden Quincy Owens. Plaintiff seeks compensatory and injunctive relief.

Plaintiff alleges the following facts in his First Amended Complaint: On September 4, 2007, Plaintiff was designated a member of a Security Threat Group (STG) making him ineligible for custody level reductions and housing changes. Plaintiff renounced his STG membership and was moved from the Bachman Detention Unit to the Browning Unit, a super-maximum unit, to begin the debriefing process. Plaintiff successfully completed the lengthy debriefing process, including administration of a polygraph, and was recommended for placement in the Rast Unit, the only closed custody unit for debriefed former STG members in Arizona. However, one or more of the Defendants prevented Plaintiff's transfer to the lower-custody Rast Unit because Plaintiff's brother–who had previously renounced his own STG membership–was already housed in Rast and pursuant to a prison restriction on housing siblings in the same unit. The Defendants caused Plaintiff and his brother to be placed on one another's "Do Not House With" (DNHW) list. Plaintiff alleges that Defendants have thereby violated his Fourteenth Amendment due process rights by depriving him of a state-created liberty interest and are subjecting him to unconstitutional conditions of confinement by prolonging his confinement in SMU I in violation of the Eighth Amendment.

### III. Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

#### A. Count I

In Count I, Plaintiff alleges that Defendants have violated his Fourteenth Amendment due process rights by depriving him of a state-created liberty interest to confinement in a

lower custody unit following successful completion of the debriefing process. As the Court previously informed Plaintiff, there is no constitutional right to a particular classification. Vignolo v. Miller, 120 F.3d 1075 (9th Cir. 1997); Baumann v. Arizona Dep't. of Corr., 754 F.2d 841,846 (9th Cir. 1985). Further, inmates have no liberty interest in remaining in a particular institution; they may be transferred for any constitutionally permissible reason or for no reason at all. Meachum v. Fano, 427 U.S. 215, 225 (1976); Ward v. Dyke, 58 F.3d 271, 274 (6th Cir. 1995); Shango v. Jurich, 681 F.2d 1091, 1100 (7th Cir.1982); Rizzo v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985).

In Count I, Plaintiff again alleges that prison authorities have refused to transfer him to the Rast Unit while his brother is there or to transfer him to a closed custody unit out of state. Plaintiff contends that the failure to do so violates prison regulations. However, it is the nature of a deprivation, rather than the language of particular prison regulations, that is determinative of whether a deprivation rises to the level of a constitutional violation. As explained by the Supreme Court,

> Sandin [v. Conner, 515 U.S. 472, 484 (1995)] involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. Sandin observed that some of our earlier cases, Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." Sandin, 515 U.S., at 481, 115 S.Ct. 2293. In Sandin, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. Id., at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

>    prison life. Id., at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
>    After Sandin, it is clear that the touchstone of the inquiry into existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement **is not the language of regulations regarding those conditions but the nature of the conditions themselves** "in relation to the ordinary incidents of prison life." Id., at 484, 115 S.Ct. 2293.

Wilkinson v. Austin, 545 U.S. 209, 222-23 (2005) (emphasis added).

In short, the failure to comply with prison regulations, absent more, does not violate a protected liberty interest. Defendants' failure or refusal to move Plaintiff to a lower custody unit or acts resulting in his continued confinement in an SMU following successful debriefing does not, absent more, violate a protected liberty interest. Accordingly, Plaintiff fails to state a claim in Count I.

**B.     Count II**

Plaintiff designates Count II as claim for threats to his safety posed by his continued confinement to the conditions in SMU I, which Plaintiff anticipates will be until his brother is released from the Rast Unit (and prison) in three years. Plaintiff alleges that his conditions of confinement in the SMU for an additional three years, after having already been confined to an SMU for two years, constitutes cruel and unusual punishment. Specifically, Plaintiff alleges he will continue to be subjected to florescent lights that are on 16 to 18 hours a day and intermittently the balance of the time; continuous excessive noise from inmates and officers; constant confinement to his cell with virtually no contact or interaction with others; and recreation in a concrete enclosure without exposure to sunlight. As a result of his confinement in these conditions for an extended period, Plaintiff suffers from headaches, mental and emotional distress, and lack of meaningful sleep.

In addressing a similar claim in the Complaint, the Court previously stated:

>    Under the Eighth Amendment, punishment may not be "barbarous" and may not contravene society's "evolving standards of decency." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). To state a claim under the Eighth Amendment, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Redman v. County of Los Angeles, 942 F.2d 1435, 1443

(9th Cir. 1991) (*en banc*). Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to state an Eighth Amendment violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation omitted). These are "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Rhodes, 452 U.S. at 348. To determine whether a violation has occurred, a Court should consider the circumstances, nature and duration of a deprivation of these necessities. Johnson, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." Hoptowit v. Ray, 682 F.2d 1287, 1259 (9th Cir. 1982). In addition to alleging facts to support that he has been subjected to conditions that pose an excessive risk of harm to the inmate, a plaintiff must also allege facts to support that a given defendant knew of, but disregarded, that risk of harm. Farmer, 511 U.S. at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." Farmer, 511 U.S. at 837; Redman, 942 F.2d at 1442.

>       Plaintiff alleges that his *continued* confinement in SMU I will subject him to unconstitutional conditions. While Plaintiff ostensibly alleges facts to support that the conditions of confinement in SMU I may rise to the level of unconstitutionality, **he fails to allege facts to support that any named Defendant acted with deliberate indifference to those conditions**. Rather, in Count II, Plaintiff is essentially seeking relief against the named Defendants for impeding his transfer to a lower custody unit. **If Plaintiff seeks relief as to his conditions of confinement, Plaintiff must allege facts to support that a particular Defendant knew of but disregarded conditions posing an excessive risk to Plaintiff's safety.** A Defendant's mere involvement in classification or housing assignments is not sufficient to support that the defendant acted with deliberate indifference to allegedly unconstitutional conditions. Because Plaintiff fails to allege facts to support that any named Defendant acted with deliberate indifference to his conditions of confinement, he fails to state a claim in Count II.

(Doc.# 4 at 10-11) (emphasis added).

In his First Amended Complaint, Plaintiff sufficiently alleges facts to support that the conditions in SMU I may be unconstitutional. Plaintiff also asserts that he informed the Defendants that their actions will result in him continuing to be held in more restrictive conditions of SMU I. However, Plaintiff does not specifically allege facts to support that the Defendants know that they are causing him to be subjected to the particular allegedly unconstitutional conditions in SMU. For example, Plaintiff does not specifically allege when or how he informed the Defendants that their actions were subjecting him to unconstitutional conditions of confinement or what those conditions were. Plaintiff thus fails to sufficiently allege facts to support that the Defendants have acted with deliberate indifference to his allegedly unconstitutional conditions by preventing his transfer to the Rast Unit. Because

JDDL-K

- 6 -

Plaintiff may be able to amend his First Amended Complaint to correct this deficiency, he will be granted leave to amend.

**IV.     Leave to Amend**

For the foregoing reasons, Plaintiff's First Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted. Within 30 days, Plaintiff may submit a second amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail Plaintiff a court-approved form to use for filing a second amended complaint. If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "Second Amended Complaint." The second amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of any prior complaint by reference. Plaintiff may include only one claim per count.

A second amended complaint supersedes any prior complaint. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat any prior complaint as nonexistent. Ferdik, 963 F.2d at 1262. Any cause of action that was raised in a prior complaint is waived if it is not raised in a second amended complaint. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

**V.     Warnings**

**A.     Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

**B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible "Strike"

Because the Complaint and First Amended Complaint have been dismissed for failure to state a claim, if Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### E. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) The First Amended Complaint is **dismissed** for failure to state a claim. (Doc.# 6.) Plaintiff has **30 days** from the date this Order is filed to file a second amended complaint in compliance with this Order.

(2) If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

JDDL-K

(3) The Clerk of Court must mail Plaintiff a court-approved form for filing a civil rights complaint by a prisoner.

DATED this 16th day of April, 2010.

Mary H. Murguia
United States District Judge